Good morning. Your honors, good morning. Gary Burcham on behalf of appellant Mr. Lugo. I'd like to reserve about two minutes for rebuttal if that's okay. I'd like to discuss with my time this morning this sufficiency of the 922 G verdicts. In this case there are two important things missing from the what was submitted to the jury and what the jury found in this case. Number one, the separate acquisition and storage requirement for accounts 3, 4, and 5. And then for government concedes on one of them, right? Count 4, that's correct. So count 4 we agree upon. 2, 3, and 5, the government claims that those convictions should be affirmed because we're under plain error. Neither one of these issues were raised as to, as to either one of these omissions. And the government cites the the Tidingow case and says we should look, the court should look to two things to decide if there was prejudice as a result of these omissions. Number one, the first omission would be the requirement for all the counts or for counts 3, 4, and 5 that the jury find separate acquisition. Oh, you're talking about the instructions. Yes, that's right. Okay, thank you. Omissions from the instructions and from the verdicts. I'm sorry. But there's no objection. Right. So we have to go plain error. That's right. Okay. Okay, now I think we're caught up. Okay, I apologize for jumping ahead there. And so the Tidingow case, that was from last year in this court, says we look to the strength of the evidence, number one, and then was this element contested and was this contrary evidence? I'd like to start with it with the Rahafe issue. I think that's that's a cleaner issue here. Starting with whether it was contested. It was not contested and there was there was no reason for the defense to contest it because it wasn't an element at the time of trial. At the time of trial, all the government needed to prove was that he was a felon, not that he knew he was a felon when this conduct occurred. And so with respect to was this contested, was contrary evidence presented by the defense? It was not, but that's simply because it wasn't that issue in the trial. Now with respect to the strength of the evidence... Not that he didn't know? Well, the government in its... I mean, was he in a fugue state when he was convicted? No. Of being a felon? Well, no. The government in its 28-J, to answer your question, Judge, talks about things in the record that infer that he knew he was a felon when this conduct was occurring. And... He was charged with a felony and he was That's correct. That's correct. It was a 2006 felony and they stipulated that at trial that he was a convicted felon. But, you know, there are situations where people are convicted of crimes that don't know exactly what what they're convicted of. They don't know if it was a felony at the time or was later reduced to a felony. This was a 10-851, I believe, for the 2006 conviction. So it's not necessarily... It was a state prison sentence, so it's not one of those classic wobblers with a probation sentence. But... Kind of a slim read there. I'm sorry? Kind of a slim read. It's a skinny read. I understand that argument. Okay, go back to the other ones. And so the government talks about, you know, the fact... His conduct during these events. He wasn't personally receiving the guns. He was not... He didn't have a license. And one inference is that he was acting this way because he knew he was a do this. But there's other inferences that the jury could have drawn. For instance, he didn't have a license or he was not personally receiving the guns because he did not want to be traced to where the guns ended up. These were going to be sold and who knows who would end up with them. And so there's other explanations for why his conduct may have been as it was. Maybe he didn't have the funds to front the money to get the guns. That's why he was more of a middleman. So one inference is that he was acting this way and behaving this way during the transactions because he knew that he was a felon and he couldn't do certain things. But there's other inferences that a jury could draw. And the problem we have here is the jury was never instructed that it had to find this. And so we're left with just basically looking through the record and trying to infer as to what the jury might have found or might not have found. The Tidango case sets the burden on the defendant to establish prejudice in this context. But it's a fairly low standard. They say it's less than a preponderance, more than I guess a scintilla. So it's somewhere less than preponderance, but more than just a hope. And so I think given that there are different inferences that can be drawn from the way he behaved during these transactions, I think, and there's no direct evidence showing that he knew he was a felon at that time, I think... I don't understand that last statement. How could he not have known given the fact that he was there at the time he was convicted and the charge that he was convicted of was a felony? Yeah, but that wasn't presented to the jury. I understand that, but... As Judge Callahan said... And he already conceded at the trial that he was a convicted felon. Correct, which is a different issue as to whether... I understand that, but... It's a bit of a skinny read. I agree with you on that, Judge. He wants you to go to the other argument you're about to make. I'd like to go to the sentencing issue if I could. So count four goes. The government agrees with that. But the government says, well, Judge Houston said he wanted to give 200 months and so there's no reason to remand this for a re-sentencing. Well, there's actually a couple reasons. Number one, when a count is reversed, this is a Christensen case, the sentence is unbundled, is the word used by this court, and a court should have a chance, the district court should have a chance anew to look at everything with the one less count. Well, it's not like there's one less gun, though. It's just like there's one less conviction. Is there... I guess, would you concede that he can get to 200 months? Absolutely. With everything that's left? Yes, absolutely. And, you know, having been a former trial judge, a lot of times trial judges... There's a little bit of a holistic approach to sentencing, what you think what someone did and how you get there. So I think what the government's arguing is the judge heard all the evidence at trial, knew every... It's not a situation that there's going to be... That even though he can't be convicted of that, it really doesn't change the factual predicate for what he's sentencing someone on. So why would we think he would do something different? A couple reasons. Well, I think the most important reason, this was a really close decision. I mean, Judge Houston, I've been appearing before him for 20 years, and I've never seen him do this. He essentially got to the sentence, he said it's 180 months, and was starting to talk about the supervised release conditions, and he stopped himself, and he said, you know what? I'm going to give 200 months. I've never seen that from him. But doesn't that tell us that he was really... I read the transcript, too. He was really impressed by this conduct, by the gun sales, including in front of this man's children. He said, you know what? I'm going to keep... You're a dangerous person. I want you off the street. That's ultimately what he certainly decided, but it was a close call because he started off with a lower sentence. It wasn't like he came out for the hearing and said, you know, I've seen the transcripts of the sales, and I've looked at the facts of the case. Let me ask you, what's the harm of sending it back for resentencing? Because, again, the error was not his. He didn't make an error, per se. It was the government conceded something, and that's the reason why there's a change. So why shouldn't we send it back? He may decide, well, I may even lower it a little bit because of this change. Why don't we give him the opportunity? That's exactly what we're looking for. The sentence has been unbundled, and we ask that Judge Houston be given a fresh chance with four counts. And my second point, Judge, is that I think having less counts, I think it makes a difference. I think if someone's convicted... It might. Yeah, and so I submit that if the court agrees that count four needs to go... That's a thicker read. It's much thicker. It's much better. I guess I'll stop at that point. You want to save time for a good sum up? Yes. Thank you very much. No, no, that's fine. Thank you. Good morning, Your Honors, and may it please the Court, Helen Hong on behalf of the United States. I'll start with that thicker read there. I agree that ordinarily in a case where a count is vacated, that it's appropriate to send it back to the judge to re-sentence in light of the vacature of the count. It's really the facts in this transcript here, though, that aligns with the Evans-Martinez case, where this court said there are some circumstances where remand is not necessarily appropriate. And this is one where the transcript, if you march through the court... There's a difference between not appropriate and inappropriate. Right. And I would agree that it's not something that's forbidden or prohibited. Your strongest case... This is... For me, this is the question in this case. And you're talking about, you know, I think conceding that ordinarily we wouldn't do this. Correct. So what's your best shot that we should here? It's really the transcript itself. The court at the beginning, and this is at ER 45, starts with a tentative where he says, I came out here thinking I was going to impose a 20-year sentence, a 240-month sentence. But in light of the sort of colloquy and the equities that have been presented, I'm going to go along with what the government has recommended, which is a 180-month term. And as the court is about to announce 180 months, he stops himself and says, that's actually not appropriate. I can't go down to 180 months just because of how unconscionable and appalling the conduct in this case is. And as a result, the court imposed a global 200-month term. At that point, he had not even apportioned the sentence among the five separate counts of conviction. He just knew under the 3553A factors that given the number of firearms involved in this offense, given the children involved in this offense, given the sort of talk about what those firearms would be used in order to harm law enforcement, that a 200-month term under the 3553A factors approximated what was necessary. And it was only after concluding that 200 months as a package total was appropriate that the court started to divvy it up among the different counts. He initially stated he was going to do 16 months on Count 1, which is the statutory maximum, followed by 200 months concurrent on Counts 2 through 5. It wasn't until the prosecutor alerted the court to the fact that the statutory maximum is 120 months that he then started to divvy it up. And that happened at ER 51. This strikes me as a really persuasive reason why you may get the very same sentence on remand. Can you tell me what we said as a matter of law about when we don't remand, where we would vary from our typical rule, which I think everybody agrees is to send it back for resentencing. And even Evans-Martinez itself says it's a discretionary determination not to send it back when the transcript itself reflects that there is no reason to expect the district court would impose a lower sentence on remand. No reason to expect the district court would impose. Okay, thank you. And I think in this case, given the facts and the transcript that's at issue, as well as the fact that the court was alerted to the lurking issues involving counts 3 and 4, that this is one of those unique outlier cases where there's no reason to expect that the district court... Would you get more if you went back? I think... I mean, I know you can't retaliate for someone for appealing, but by the same token, I'm just wondering on the, you know, the argument that the court really, you know, could say, I've been thinking about this and since you've been gone, I really wasn't feeling good about my 200 months. I doubt the district court in this case would impose anything more than 200. We certainly wouldn't urge it unless under Pepper there was evidence the defendant had engaged in some serious misconduct while he's been in custody up to this point. Right now, I have no reason to believe that is the case. So I think it really, it fits within the bounds of Evans,  there is no reason to expect that the district court would impose a lower sentence because as Your Honor recognized, the same number of firearms that are at issue, the same amount of misconduct and aggravating conduct is still here. It's just that counts three and four should have merged and we should have urged that to the court before the sentencing had happened. We're now in a circumstance where we've had time for reflection and agree that counts three and four should merge but ultimately at the end of the day, I don't think it ultimately changes the sentence. Since you have a few more minutes, could I ask a question about this, the experts? Yes, Your Honor. The transcript read to me, I was satisfied when I went all through that these folks testified as fact witnesses to be clear one way or another that expert should say that a little differently. Either they testified as fact witnesses or they testified to points where expert testimony was not needed but the transcript shows and it was distracting to me places where the it's almost like  to qualify or are asking for these experts to call upon their experience which struck me as improper or certainly unusual let me put it that way. So can you explain what was going on there? Correct. I think all of the facts that were elicited would ordinarily be elicited in a direct examination of a witness of that kind anyway. With a fact witness you're going to go through the background of an individual and the training that the individual received before they engaged in the law enforcement activity and where their percipient testimony is elicited. So all of that testimony would have come out regardless the fact that they had been involved in a number of gun trafficking investigations the fact that they had been involved in wiretap investigations with CIs all of that again I think would have come out in the background. I agree there are parts of the transcript where we could have been better about ensuring that we were not tethering that experience to the particular interpretation that was provided. I think the jury could have been left with exactly that impression. So I really appreciate that you've looked at that. It struck me as unfortunate because I think the jury could have been left exactly with that impression. The reason I think you win on these is so for the touchdown for example they testified as fact witnesses they literally observed I think overheard the two agree upon that using that code right? And then there's other places where there's a definition for money translation and the other evidence shows very clearly using counting money so that in context there could have been no question that the jury would have understood. So I went through each one of them I have no problem with it but I just want to give you that feedback that it struck me since you do have a few minutes left it struck me as unfortunate that the background of an experience of those witnesses was used in the way it was in the sequence in which it was used. And I appreciate that Your Honor and I would note I think it's really three separate sort of interpretations it wasn't lurking throughout all of them but on those I agree that we could have done better to make sure that the two were not linked and that it was more about the rational perceptions of the witness in terms of providing the ambiguous interpretation. Thank you counsel. Unless the court has any other questions the United States would request an affirmation. Thank you Your Honor. Thank you. Thank you Your Honors I'll submit on the sentencing issue I'll submit on the expert issue I would just like to highlight for the court that in my 28-J regarding the rehafe issue I also set forth in there that it's our position that the omission of the knowledge of status element from the indictment also requires reversal in this case. Essentially the rule is that if an element is necessary to convict it's necessary  and so it's our position and I'm not going to go beyond this but it's our position that not only is reversal required because it wasn't found by the jury but it also should have been indicted by the grand jury as well. If the court has no further questions I'll submit. Thank you both for your argument. This matter will
judges: Callahan, Christen, Wu